# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **BENNIE LEE HARRIS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **5:10-cv-3537-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Bennie Lee Harris ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Plaintiff filed his application for Title II disability insurance benefits and

Title XVI Supplemental Security Insurance ("SSI") on June 28, 2007, alleging a disability onset date of June 19, 2007[1], from seizures. (R. 82-86, 100, 103). After the denial of his applications on July 25, 2007, (R. 64), Plaintiff requested a hearing before the ALJ on August 21, 2007, (R. 74), which occurred almost two years later, on March 6, 2009. (R. 34). At the time of the hearing, Plaintiff was 60 years old and had a twelfth grade education. (R. 93, 103). His past relevant work included heavy and unskilled work as a farm laborer. (R. 55). Plaintiff has not engaged in substantial gainful activity since December 31, 2002. (R. 104).

Three weeks after the hearing, on April 1, 2009, the ALJ denied Plaintiff's claim, (R. 15-21), which became the final decision of the Commissioner of the SSA when the Appeals Council refused to grant review. (R. 1-3). Plaintiff then filed this action for judicial review pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3), alleging that he is disabled due to "seizures and the residuals of prostate cancer surgery." Doc. 1 at ¶ 5.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.*

---

[1] Plaintiff initially alleged a disability onset date of December 31, 2000, and then December 31, 2002. (R. 82, 103).

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative

answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

Plaintiff contends that the ALJ's decision denying his disability claim is not supported by substantial evidence and asks this court to overturn the decision. Based on its review of the ALJ's decision, the court finds no reversible error and concludes that the ALJ's decision is due to be affirmed. The court notes that in performing the five step analysis, initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 19, 2007, his alleged onset date, and therefore met Step One. (R. 17). The ALJ acknowledged that Plaintiff's combination of severe conditions of "a history of chronic alcohol abuse with questionable remission and a history of alcohol withdrawal seizures" met Step Two. (R. 17). As it relates to Step Two, the ALJ did not consider Plaintiff's

prostate cancer surgery residual condition[2] because there were "no apparent residuals and this is also found to be a non-continuing and a non-severe impairment." (R. 17-18). The ALJ proceeded to the next step and found that Plaintiff did not satisfy Step Three since his impairments neither met nor medically equaled the requirements for any listed impairment. *Id*. Although the ALJ determined Plaintiff did not meet Step Three, consistent with the law, the ALJ went on to Step Four, in which he held that Plaintiff could not perform his past relevant work as a heavy and unskilled farm laborer because "he would be exposed to dangerous machinery." (R. 20). Also at Step Four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with seizure related limitations and restrictions including no climbing of ropes, ladders, or scaffolding; no work at unprotected heights; and no work around dangerous, moving, unguarded machinery." (R. 18). In making this determination, the ALJ gave the state agency's disability examiner's opinion that Plaintiff's condition was not severe enough to keep him from working "considerable weight." (R. 19). Lastly, in Step Five, the ALJ considered Plaintiff's age, education, work experience, RFC, and

---

[2] The surgery is actually the key basis for Plaintiff's contention that he is disabled. However, as shown in the section V.B., *infra*, Plaintiff failed to present any medical evidence to support his contention that the surgery rendered him disabled.

impairments, and determined that a significant number of jobs exist in the national economy that Plaintiff can perform. (R. 20). Because the ALJ answered Step Five in the negative, again, consistent with the law, the ALJ determined that Plaintiff is not disabled. (R. 21); *see also McDaniel*, 800 F.2d at 1030 ("A negative answer to any question other than Step Three, leads to a determination of 'not disabled.'").

## V.  Analysis

The court turns now to Plaintiff's contentions. Specifically, Plaintiff contends that the ALJ committed reversible error by (1) improperly giving "considerable weight" to the opinion of a single decision maker, doc. 8 at 11-15, (2) not finding that his "residual impairment from the surgery [ ] is a severe impairment," *id*. at 16-20, and (3) rejecting his credibility in properly assessing the effects of his seizure disorder on his ability to work, *id*. at 20-32. Although the court agrees that the ALJ improperly gave "considerable weight" to the state agency's disability examiner's findings, for the reasons stated below, the court disagrees that the ALJ committed reversible error.

A.  *The ALJ erred by giving considerable weight to the opinion of a single decision maker.*

As stated previously, in his analysis of Step Four of the Five Step sequence, although the ALJ found that Plaintiff could not perform his past relevant work, the

ALJ gave "considerable weight" to the finding of a state agency examiner ("SDM") in finding that Plaintiff had the RFC to perform a full range of work with some seizure related limitations. Plaintiff contends that the ALJ erred by improperly giving considerable weight to the RFC opinion of the SDM. Doc. 8 at 10-15. To support this contention, Plaintiff relies on a memorandum issued by Social Security's Acting Associate Administrative Law Judge John Costello, dated September 14, 2010, which provides that "SDMs are not opinion evidence that [ALJs] should consider and address in their decisions," but that ALJs "must continue to consider findings made by State agency [**medical consultants**] as opinion evidence and weigh that evidence together with the other evidence in the record." Doc. 8-1 at 1-2 (emphasis added). Judge Costello's view is consistent with the case law. As Judge William Cassady in the Southern District of Alabama recently held,

> [T]he Commissioner's fifth-step burden cannot be met by a lack of evidence or, where available, by the [RFC] assessment of a non-examining, reviewing physician; instead, this fifth-step burden must be supported by the [RFC] assessment of a treating and examining physician. The lack of a physical residual functional capacity assessment from a treating or examining physician rings much louder in this case because of the ALJ's clear reliance upon a physical RFC assessment completed by a disability specialist, an assessment which is entitled to absolutely no evidentiary weight.

*Orange v. Astrue*, 2011 WL 1237525 at *3 (S.D. Ala. Apr. 1, 2011); *see also*

*Bolton v. Astrue*, 2008 WL 2038513 *4 (M.D. Fla. May 12, 2008) ("An SDM is not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources.") (internal quotation marks omitted); *see also* 42 U.S.C. § 423(c)(5)(A) ("Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques [ ] must be considered in reaching a conclusion as to whether the individual is under a disability.").

By his own admission in the opinion, the ALJ here clearly afforded "considerable weight" to the SDM's opinion. (R. 19). That the decision to do so constitutes error, however, does not mean that this court must automatically reverse the ALJ. Instead, the court also has to ascertain whether, based on objective medical evidence, other grounds exist to support the ALJ's decision that Plaintiff is not disabled. Stated differently, Plaintiff needs to show that absent the ALJ's reliance on the SDM, no substantial evidence exists to support the ALJ's finding that Plaintiff has the RFC to perform a full range of work with some seizure related limitations. Plaintiff failed to make this showing. Therefore, where, as here, substantial evidence exists to support the ALJ's non-disability finding, the ALJ's decision is due to be affirmed even though the ALJ erred in

giving "considerable weight" to the SDM's opinion.

B.     *The ALJ did not err in finding that Plaintiff's residual effects of his prostatectomy was not a severe condition.*

Next, Plaintiff contends that the ALJ erred by failing to account for the residual impairment from his prostate surgery. Specifically, after his prostate cancer diagnosis, Plaintiff underwent a radical retropubic prostatectomy on September 30, 2008, which involved a 8 cm infraumbilical incision of the abdomen and fascia to remove the prostate gland and surrounding tissue. (R. 930). Consequently, as his second point of error, Plaintiff argues that his "anatomical residual impairment from the surgery, not from the cancer, is a severe impairment and should have been so treated by the ALJ." Doc. 8 at 16. In other words, Plaintiff contends that the nature of the prostate surgery itself – incising the muscle and fascia – and the risks of hernia and pain require the ALJ to treat it as a severe impairment. *Id.*[3] The court disagrees.

A severe impairment is one which significantly limits a claimant's physical

---

[3] Plaintiff contends also that his testimony of his inability to lift more than twenty pounds negates the ALJ's RFC determination that he can perform work at all exertional levels, but instead, indicates that "he would be limited to 'Light' work [ ] after the radical retropubic prostatectomy surgery." Doc. 8 at 19-20. Because the court finds that the residual effects of Plaintiff's prostate surgery is not a severe condition, this argument is without merit. Alternatively, although a claimant's subjective complaints can be considered by the ALJ, they cannot establish disability in the absence of other medical evidence. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i). Because Plaintiff failed to support his contention with *any* medical evidence, the ALJ's decision is supported by substantial evidence.

or mental abilities to do basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c).  Moreover, Step Two of the sequential process requires a showing that an impairment is severe for at least twelve consecutive months.  *Id*. at §§ 404.1505(a).  Here, the evidence showed otherwise and militates against Plaintiff's contention of disability.  Specifically, after the surgery, Plaintiff "ambulated the halls, tolerated a regular diet and by mouth pain medicines and was discharged home in stable condition" the next day.  *Id*.  This is hardly the kind of evidence that establishes severe impairment of at least a twelve month duration.  In any event, Plaintiff has not presented any objective medical evidence to support his contention that the surgery qualifies as a severe impairment.  Instead, he simply describes the invasive nature, risks, and pain involved in a prostatectomy as evidence that he has residual effects that are severely limiting.  In other words, Plaintiff contends he is disabled simply because he had surgery.  This, however, is not the relevant standard for a disability determination.  While Plaintiff's prostatectomy was surgically invasive, required incisions in the muscles and fascia, and included risks of pain and hernia, he has failed to establish, through objective medical evidence, any residual symptoms that the ALJ or this court could consider to constitute a severe impairment.

      Despite Plaintiff's contentions to the contrary, the fact that all surgeries

pose an inherent risk in itself is not conclusive medical evidence that the risk manifested in him or others who had the surgery. This may explain why Plaintiff failed to cite any medical evidence even suggesting he has a severely limiting condition as a result of the surgery. Because Plaintiff failed to meet his burden of proving that he actually suffers from severe, limiting affects of his surgery, the court finds that the ALJ did not err in failing to include as a severe impairment the residual effects, if any, of Plaintiff's prostate surgery.

C.  *The ALJ did not err in his assessment of the effects of Plaintiff's seizure disorder on his ability to work.*

As his final contention of error, Plaintiff asserts that he is disabled because of seizures and argues, in a rather circuitous fashion, that the ALJ erred when he rejected his credibility "concerning the intensity, persistence and limiting effects" of his seizure disorder because of his alcohol use and non-compliance with his medication. (Doc. 8 at 20-32; R. 19). Plaintiff has a chronic history of alcohol abuse, (R. 39), and testified that his seizures "happened so often" when he stopped drinking around June 19, 2007. (R. 40, 42). However, after his prostate surgery in 2008, Plaintiff's seizures occurred less frequently and he has not had one since December 2008. (R. 42-43).

As it relates to the seizures, the record evidence is as follows:

(1)  On June 19, 2007, Plaintiff was treated in the emergency room for a seizure and discharged that same day in "good" condition.  (R. 162, 164, 169).  The treatment notes indicated Plaintiff was non-compliant because he "missed recent doses of seizure meds."[4]  (R. 167).  There was no evidence of related alcohol use.  (R. 174);

(2)  Approximately three months later, Plaintiff was treated again in the emergency room due to seizure activity on September 24, 2007.  (R. 272, 279).  The treatment notes indicated disorientation with respect to place, (R. 276), and an alcohol level of 19.  (R. 285).  The emergency room physician discharged Plaintiff that same day and observed him walking in "good" condition.  (R. 280);

(3)  Three days later, on September 27, 2007, Plaintiff was admitted to the hospital and diagnosed with seizure, grand mal, alcohol abuse, episodic, and noncompliance.  (R. 189, 199).  He had an alcohol level of less than 10.  (R. 195).  The treatment notes indicated that Plaintiff's post-ictal symptom was confusion.  (R. 203).  The treating physician adjusted Plaintiff's Dilantin, and on September 30, 2007, discharged him in "good" condition with instructions to enroll in Alcoholics Anonymous and to participate in activity "as tolerated."  (R. 193); and

---

[4] Plaintiff's physician prescribed Dilantin for the seizures, (R. 48), which the record shows Plaintiff failed to consistently take as prescribed.

(4) On October 20, 2007, and October 26, 2007, Plaintiff was seen again in the emergency room for seizure activity and discharged the same day in stable condition on both days. (R. 295, 304, 313). On both occasions, Plaintiff's blood chemistry test indicated the presence of alcohol. (R. 303, 319). The October 26, 2007, discharge diagnosis was alcohol withdrawal seizures and the discharge instructions stated, "[y]ou will not have any hope of stopping your seizures until you stop drinking entirely." (R. 307, 314).

The record does not reflect that Plaintiff had any other seizures in 2007. As for 2008, although Plaintiff's alcoholism was in remission, he appeared to have difficulties managing an effective Dilantin dose. Plaintiff presented to the emergency room for seizures and was discharged the same day on February 17, 2008, (R. 607), March 25, 2008, (R. 622), May 27, 2008, (R. 646), July 30, 2008, (R. 672), September 27, 2008, (R. 711), and December 17, 2008, (R. 982). There was no indication of alcohol consumption during any of Plaintiff's 2008 hospital visits. Also, all of the treatment notes indicated the emergency room physcan discharged Plaintiff the same day in stable condition, without any residual issues present. For example, the February 17, 2008, discharge notes stated that "Patient left by walking with a steady gait" in "stable" condition. (R. 605). During his May 27, 2008, visit, the physician noted that Plaintiff was "not taking meds," (R.

644) and the discharge notes indicated "Patient left by walking with steady gait," (R. 645). During the July 30, 2008, visit, Plaintiff received intravenous medication for "low dilantin level," and upon discharge it was noted that he was "alert and oriented" and "left by walking with a steady gait." (R. 670). Likewise, during the September 2008, emergency room visit, Plaintiff was discharged in "stable" condition, (R. 957), "walking with a steady gait," (R. 954), and was diagnosed with (1) seizure (unspecified), (2) sub-therapeutic Dilantin, and (3) dehydration. (R. 957).

Despite the treatment notes, Plaintiff contends that he is disabled because of his history of seizures and that the ALJ erred when he found that he had the RFC to perform "a full range of work at all exertional levels." (R. 18). The court disagrees. Although the ALJ erroneously gave "considerable weight" to the SDM, the ALJ's RFC determination is supported by substantial evidence. First, the ALJ considered Plaintiff's seizure disorder in assessing his RFC because he assigned seizure related limitations in his assessment, including "no climbing ropes, ladders, or scaffolding; no work at unprotected heights; and no work around dangerous, moving, unguarded machinery." (R. 18). Second, the ALJ did not err in finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are

inconsistent with the above [RFC] assessment." (R. 19).  Plaintiff testified that he has body aches, headaches, and dizziness for about two hours after a seizure. (R. 44).  He testified further that he is sore, stiff, and weak for another two days, which prevents him from doing "anything," (R. 44-45), that within two days of a seizure, he can stand "a little longer than [10-15 minutes]," that he cannot lift or carry anything, that he "can walk maybe 100 feet," (R. 45), and that it takes him "[a]bout a week" to get back to normal" because he walks "wobbly," and is "kind of weak" until then. (R. 46).  The medical evidence, however, does not support Plaintiff's contentions.  Instead, the evidence showed that the emergency room physicians usually discharged Plaintiff the same day, in "good" or "stable" condition, and that often Plaintiff walked with a steady gait at the time of discharge.  To the extent that Plaintiff's seizures are as disabling as he describes, he failed to provide any medical evidence to support his contentions.

      The court notes that the only evidence Plaintiff offered to support his disability contention is a hypothetical question his lawyer posed to the vocational expert.  Specifically, at the hearing, when Plaintiff's attorney asked about whether any work exists in the region or national economy for a person who is hospitalized every three months for a seizure and who, subsequently, is unable to "engage [ ] in any lifting or other sustained work activity for two days minimum and up to a

week," the vocation expert answered, "No sir. That would preclude all work activity due to excessive absence." (R. 58). However, absences of up to a week four times a year or a need for modified light duty assignments for up to four weeks annually are neither excessive nor do they render an individual unemployable. In fact, the Americans with Disabilities Act and the Family and Medical Leave Act ("FMLA") afford employees the very protections the hypothetical assumes renders the employee unemployable. In fact, under the FMLA, a qualified employee can take up to twelve weeks of annual medical leave.

Moreover, the evidence here does not support Plaintiff's contention that he is unable to engage in any lifting or other work activity for two or more days after a seizure. In fact, none of Plaintiff's discharge notes listed any work limitations or restrictions. While it appears from the record that Plaintiff sought treatment for his seizure disorder primarily through the emergency room rather than from a primary care physician, this court must still evaluate this matter based on the evidence before it. In that regard, based on this record, Plaintiff's seizure disorder does not prevent him from performing work at different exertional levels. Therefore, while the ALJ erred by placing "considerable weight" on the disability examiner's RFC assessment, the error was harmless because substantial evidence supports the ALJ's finding that Plaintiff can perform work at all exertional levels,

but with seizure related limitations and restrictions.

## VI.  Conclusion

In light of Plaintiff's failure to support his disability contention by objective medical evidence, the court concludes that the ALJ's decision to deny Plaintiff's claim is supported by substantial evidence.  The Commissioner's final decision is, therefore, **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

Done the 31st day of August, 2011.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE